# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| LUKE, INC., | ) |
| | ) |
| Plaintiff, | )  Case No. 2:24-cv-02048-JPM-cgc |
| | ) |
| v. | ) |
| | ) |
| BERKLEY NATIONAL INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

## ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court are cross-motions for summary judgment: a Motion for Partial Summary Judgment filed by Plaintiff Luke, Inc. ("Plaintiff" or "Luke"), and a Motion for Summary Judgment filed by Defendant Berkley National Insurance Company ("Defendant" or "BNIC"). (ECF Nos. 47, 48.) The sole question for the Court's consideration is whether the construction of Plaintiff's skilled nursing facility was "complete" as of November 29, 2021, such that the insurance policy issued by Defendant did not cover Plaintiff's losses from water damage incurred on that date. (See ECF No. 47 at PageID 572.)[1]

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion for Partial Summary Judgment and **GRANTS** Defendant's Motion for Summary Judgment.

---

[1] At the Motion Hearing on March 11, 2025, the Parties agreed the sole question is completion, and the question of damages was withdrawn for the purpose of the Court's consideration of these Motions. Accordingly, the Court only considers the Parties' arguments regarding completion.

**I.     BACKGROUND**

This action concerns the potential coverage under a commercial builder's risk insurance policy, number MIM 1030753-50, issued by Defendant (the "Policy") for water damage at Plaintiff's not-yet-opened skilled nursing facility (the "SNF").  (See ECF No. 46 ¶ 1.)

**A.     Undisputed Facts**

On November 29, 2021, Plaintiff's general contractor, Linkous Construction Co., Inc. ("Linkous"), discovered a burst pipe in a bathroom that caused extensive flooding water damage at the SNF (the "Flood").  (Id.)  On January 19, 2023, Plaintiff submitted a claim pursuant to the Policy to Defendant in connection with the Flood.  (Id.)  Defendant investigated and denied Plaintiff's claim.  (Id.)

i.     The SNF Project

Plaintiff owns real property located in Collierville, Tennessee, known generally as "The Farms at Bailey Station" (the "Farms").  (Id. ¶ 2.)  Plaintiff sought to establish a continuing care retirement community, including the SNF, at the Farms.  (Id.)  Plaintiff intended to operate the SNF under the trade name Jordan River Health Center.  (Id.)  On September 19, 2019, Plaintiff contracted with Linkous to begin construction on the SNF.  (Id.)

Linkous commenced construction of the SNF on or about January 2020.  (Id. ¶ 4.)  On August 26, 2021, the architect of record, Elizabeth Schoonover (the "Architect"), issued a certificate of substantial completion for the SNF.  (Id. ¶ 5.)  The date of substantial completion was August 18, 2021.  (Id.)  As of September 1, 2021, Linkous had still not completed some of the items on the Architect's punch list, including the installation of a water feature in the lobby.  (Id. ¶ 6.)

Linkous installed a "Vigal" nurse call system at the SNF. (See id. ¶ 11.) On November 23, 2021, the scheduled inspection of the nurse call system did not occur because the necessary drawings of the system were not on site or previously submitted to and approved by the State of Tennessee. (Id. ¶ 11.) The Parties do not know whether the nurse call system would have passed the inspection at that time had the state-approved drawings been available. (Id. ¶ 12.)

On November 29, 2021, the SNF appeared ready, but had not yet passed the necessary inspections, to obtain a certificate of occupancy or a license to operate as a skilled nursing facility. (Id. ¶ 8.) To the Parties' knowledge, there were no SNF items that needed to be constructed, erected, fabricated, or installed on November 29, 2021. (Id. ¶ 14.)[2]

The SNF was designed to operate with sixty beds. (Id. ¶ 17.) Under Tennessee law, Plaintiff was required to obtain one certificate of need ("CON") per thirty beds. (Id.) The two initial CONs obtained by Plaintiff for the SNF expired by their terms on January 1, 2022. (Id. ¶ 18.) On January 13, 2022, Plaintiff sent a letter of intent to file a CON application ("CONAPP") to replace one of the two lapsed CONs. (Id. ¶ 21.)

On January 31, 2022, Plaintiff filed its first replacement CONAPP for thirty beds. (Id. ¶ 22.) On that CONAPP, Plaintiff "represented that '[t]he SNF was almost ready to open[—]there was only one more Life Safety Inspection to be conducted[—]in late November 2021 when a water pipe burst and flooded part of the facility. In its zeal to remedy that, [Plaintiff] mistakenly failed to seek an extension of the CONs, and they expired.'" (Id. ¶ 10 (quoting ECF No. 46-3 at PageID

---

[2] In its Motion for Summary Judgment, Plaintiff states it is "undisputed" that a pedicure chair had not yet been installed. (ECF No. 47-1 at PageID 584.) This fact, however, is not in the Joint Statement of Undisputed Facts, (cf. ECF No. 46), and Defendant states it is only undisputed that the report saying as much is authentic, (ECF No. 50-1 at PageID 707). Accordingly, the Court considers the fact regarding the pedicure chair disputed and thus irrelevant to its analysis.

3

481.) The CONAPP also represented that "Construction [was] 100% Complete" in November 2021. (Id. ¶ 7 (capitalization in original).)[3]

   ii.  The Policy

Defendant issued the Policy to named insured Linkous, effective November 1, 2019, through March 1, 2022 (later extended to May 30, 2022). (See id. ¶¶ 1, 3; see also ECF No. 46-2 (Policy).) The SNF is a covered jobsite under the Policy. (ECF No. 46 ¶ 3.) Plaintiff is an additional insured as the SNF project owner. (See id.; ECF No. 46-1 at PageID 351.)

The Policy contains, among other forms, a Builders' Risk Coverage – Scheduled Jobsite Form – Comprehensive Form (the "Builders' Risk Coverage Form") and a Delay in Completion Coverage Part (the "DIC Coverage Part"). (ECF No. 46 ¶ 3.) The Builders' Risk Coverage Form excludes coverage for loss caused by a "delay in the completion of construction, erection, or fabrication of a 'building or structure' or any portion of a 'building or structure.'" (ECF No. 46-2 at PageID 394.) The DIC Coverage Part, however, restores coverage for certain expenses incurred during the "delay period." (Id. at PageID 417.) The following are relevant definitions for coverage under the DIC Coverage Part:

> "Delay" means an interruption in the construction, erection, or fabrication of a "building or structure" caused by a covered peril.
>
> "Delay" does not mean an interruption in or extension of construction, erection, or fabrication caused by or resulting from a change order, design change, or other action or decision that is independent of direct physical loss or damage caused by a covered peril for which payment is made under the Builders' Risk Coverage [F]orm to which this coverage part is endorsed, whether occurring prior to or after such physical loss or damage.
>
> …
>
> "Delay period" means the period of time the completion of the construction, erection, or fabrication of a covered "building or structure" is "delayed" as a result

---

[3] This particular statement on the CONAPP reads "Construction 100% Complete" in November 2021 within a Projected Completion Forecast Chart. (ECF No. 46-3 at PageID 494.) Because the Parties stipulated to the fact as iterated above, (see ECF No. 46 ¶ 6), the Court accepts the stipulation as an undisputed fact.

4

of direct physical loss or damage caused by a covered peril to property covered under the Builders' Risk Coverage [F]orm to which this coverage part is attached. This is not limited by the expiration date of the policy.

(Id. at PageID 416.)

Under the main form of the Policy, "buildings or structures" are defined as "buildings; structures; materials and supplies that will become a permanent part of the buildings or the structures; and foundations, excavations, grading, filling, attachments, permanent fencing, and other permanent fixtures." (ECF No. 46-2 at PageID 400 (citation modified).) The main form excludes from coverage items "that will not become a permanent part of a covered 'building or structure'." (ECF No. 46-2 at PageID 383.)

        iii.       The Flood and Related Claims under the Policy

Linkous was at the SNF on Tuesday, November 23, 2025. (See ECF No. 46 ¶ 11.) There was no one on site for the Thanksgiving holiday weekend starting on Thursday, November 25, 2025. (ECF No. 47-1 at PageID 579; see also ECF No. 46 ¶ 15.)

On Monday, November 29, 2021, at approximately 6:30 a.m., Linkous discovered water leaking from a toilet in SNF Unit 124. (Id. ¶ 15.) The Flood caused water damage to a portion of the first floor of the two-story SNF "building or structure." (Id.) Linkous completed the repairs to SNF with "materials of like kind and quality" on February 25, 2022. (Id. ¶¶ 24, 28.)

At some point after the Flood, Linkous made a claim for the cost to repair the water damage related to the Flood. (Id. ¶ 15.) Defendant paid Linkous' claim, including but not limited to the reasonable cost to expedite repairs. (Id.)[4]

---

[4] At the Motion Hearing, Defendant clarified that Linkous made a claim under the main form of the Policy for physical damages in the course of construction. The term "course of construction" is not included in the DIC Coverage Part. (ECF No. 46-2 at PageID 382.)

5

On January 19, 2023, Plaintiff made a delay-in-construction claim related to the Flood with Defendant under the Policy. (See ECF No. 46 ¶¶ 1, 16, 36–37.) Defendant investigated Plaintiff's claim. (Id. ¶ 1.) In a letter dated August 18, 2023 (the "Denial Letter"), Defendant denied coverage under the Policy on the grounds that construction of the SNF was complete before the Flood occurred. (See id. ¶ 1; ECF No. 46-1 (Denial Letter) at PageID 354, 356.)

**B.     Procedural History**

Plaintiff filed its Complaint against Defendant for breach of contract in Chancery Court for Shelby County on November 29, 2023. (ECF No. 1 ¶ 1.) Defendant received a copy of the Complaint and summons from the Tennessee Department of Commerce and Insurance on December 27, 2023. (Id.) Defendant removed the case to this Court on January 25, 2024, pursuant to the Court's jurisdiction under 28 U.S.C. §§ 1332(a) and 1441(b). (Id. ¶¶ 7–8.)[5]

The Parties appeared for a Scheduling Conference on April 1, 2024. (ECF No. 29.) At that time, the Parties indicated they anticipated either settling the dispute within thirty days or reporting otherwise to the Court. (ECF No. 31 at PageID 265 n.2.) After receiving no notice, the Court ordered a status report on December 16, 2024. (ECF No. 38.) The Parties reported they were still in settlement discussions and exchanging relevant information. (ECF No. 39 at PageID 325.) The Parties appeared for a Video Status Conference on January 17, 2025. (ECF No. 42 (Minute Entry).) At that time, it was determined that this matter would likely be resolved on motions for summary judgment instead of the scheduled bench trial. (See ECF No. 44.)

The Parties filed a Joint Statement of Undisputed Facts, including certain exhibits, on February 3, 2025. (ECF No. 46.) On February 14, 2025, Plaintiff filed its Motion for Partial

---

[5] Plaintiff is "a Tennessee non-profit corporation with its principal place of business" in Tennessee. (Id. ¶ 2.) Defendant is an Iowa corporation with its principal place of business in Iowa. (Id. ¶ 3.) Plaintiff "seeks recovery of up to $5 million in compensatory damages, exclusive of interest and costs, in connection with its disputed [delay-in-completion] claim in the amount of $3,296,271.07." (Id. ¶ 9.)

6

Summary Judgment, (ECF No. 47), and Defendant filed its Motion for Summary Judgment, (ECF No. 48). The Parties filed their respective Responses in Opposition on February 28, 2025. (ECF Nos. 49 (Pl.'s Resp.), 50 (Def.'s Resp.).) Defendant filed a Reply in Support of its Motion on March 10, 2025. (ECF No. 51.) The Parties appeared in person before the Court for a hearing on the Motions on March 11, 2025 (the "Motion Hearing"). (ECF No. 52 (Minute Entry).)

## II.   LEGAL STANDARD

A moving party is entitled to summary judgment "if [it] shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For the purposes of summary judgment, a fact is "material" if "proof of that fact would establish or refute an essential element of the cause of action or defense." Bruederle v. Louisville Metro Gov't, 687 F.3d 771, 776 (6th Cir. 2012).

"In considering a motion for summary judgment, [the] court construes all reasonable inferences in favor of the non-moving party." Robertson v. Lucas, 753 F.3d 606, 614 (6th Cir. 2014) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). First, the "moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact." Mosholder v. Barnhardt, 679 F.3d 443, 448 (6th Cir. 2012) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If satisfied, the burden then shifts to the non-moving party to "set forth specific facts showing a triable issue of material fact." Id. at 448–49; see also Fed. R. Civ. P. 56(e). If the non-moving party fails to show as much, "the moving part[y is] entitled to judgment as a matter of law and summary judgment is proper." Martinez v. Cracker Barrel Old Country Store, Inc., 703 F.3d 911, 914 (6th Cir. 2013) (quoting Chapman v. UAW Local 1005, 670 F.3d 677, 680 (6th Cir. 2012) (en banc)) (internal quotation marks omitted). The decisive "question is whether 'the evidence presents a sufficient disagreement to require submission to a

7

[fact finder] or whether it is so one-sided that one party must prevail as a matter of law.'" Johnson v. Memphis Light Gas & Water Div., 777 F.3d 838, 843 (6th Cir. 2015) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52 (1986)).

## III. ANALYSIS

Plaintiff seeks partial summary judgment declaring the damage caused by the Flood was in fact covered by the Policy because the construction of the SNF was not complete on November 29, 2021, and as such Plaintiff is entitled to payment of its delay-in-completion claim. (ECF No. 47 at PageID 572–73.) Defendant seeks summary judgment declaring the Policy did not cover the damage because the construction of the SNF was already complete at the time of the Flood. (ECF No. 48 at PageID 639.)

The central question, then, is whether the Flood caused an "interruption in the construction, erection, or fabrication of [the] 'building or structure'" of the SNF and thus triggered coverage under the DIC Coverage Part of the Policy. (See ECF No. 46-2 at PageID 416.) In other words: was the building or structure of the SNF complete at the time of the Flood?

Because this case falls within the Court's diversity jurisdiction, the Court applies Tennessee law. See Howell v. Colonial Penn. Ins. Co., 842 F.2d 821, 822 (6th Cir. 1987); (see also ECF No. 48-1 ("The Parties agree that Tennessee law governs the Policy.").)

### A. Lack of Genuine Dispute of Material Fact

A material fact is one that, if proven, "would establish or refute an essential element of the cause of action or defense." Bruederle, 687 F.3d at 776. The material facts here relate to the progress and status of construction of the "building or structure" of the SNF at the time of the Flood. (See ECF No. 47 at PageID 572); id.

8

The Court finds there is no genuine dispute of material fact as to the status of the construction of the SNF immediately prior to the Flood. The Joint Statement of Undisputed Facts lays out the undisputed timeline of the SNF project leading up to the Flood. (See ECF No. 46 at PageID 339–40.) The Parties do not dispute the facts themselves, but rather the facts' legal significance under the Policy. (See, e.g., ECF No. 46 at PageID 341–42 (Parties' opposing contentions regarding the significance of the pending testing of the installed nurse call system).)[6] The Policy is an undisputed document in the record. (See ECF No. 46-2.) Accordingly, the Court's summary judgment analysis may proceed. See Fed. R. Civ. P. 56(a).

### B.  Entitlement to Judgment as a Matter of Law

Whether Plaintiff or Defendant is entitled to judgment as a matter of law hinges on the Policy. Under Tennessee law, the Court reviews the meaning of the relevant language in the Policy using basic contract interpretation principles. See S. Trust Ins. Co. v. Phillips, 474 S.W.3d 660, 664–65 (Tenn. Ct. App. 2015) (internal citations omitted). The Court must interpret a contract according to its plain terms, considering the entire contract when determining the meaning of any part. See Mid-S. Title Ins. Corp. v. Resolution Trust Corp., 840 F.Supp. 522, 526 (W.D. Tenn. 1993.) The Court must also "construe the terms of a contract to give effect to every term and every provision—the Court cannot construe the terms in a way that causes a provision 'to have no consequence.'" Simmons Little Bluestone Ltd. P'ship v. Nationwide Ins. Co. of Fla., No. 2:22-cv-02822-TLP-atc, 2024 WL 2237976, at *5 (W.D. Tenn. Apr. 16, 2024) (quoting Allen v. United States, 83 F.4th 564, 573 (6th Cir. 2023)). "[C]ourts prefer an interpretation that gives reasonable meaning to all provisions to one that leaves a portion of the agreement useless, meaningless, or

---

[6] The one potential factual dispute regards the pedicure chair. (See supra Part I.A.iii. n.2.) However, a pedicure chair is not part of the "building or structure" of the SNF under the Policy, as it was not "a permanent part of [the] covered 'building or structure.'" (See ECF No. 46-2 at PageID 383.) Thus, its installation status is not a material fact. See Bruederle, 687 F.3d at 776.

9

inexplicable." Steven W. Feldman, 21 Tenn. Prac. Contract Law and Practice § 8:20 (Aug. 2023 ed.).

The key phrase in the Policy is "the completion of the construction, erection, or fabrication of a covered 'building or structure'" in the DIC Coverage Part. (See ECF No. 46-2 at PageID 416.) The Parties' arguments for summary judgment revolve around the meaning of "completion" of the SNF under the Policy.

      i.    Plaintiff's Arguments

Plaintiff argues that the SNF was nearly, but not totally, complete at the time of the Flood. (See ECF No. 47-1 at PageID 583–84.) In support, Plaintiff points to considerations external to the Policy. Plaintiff emphasizes that the Architect's punch list for the SNF had outstanding items on September 1, 2021. (Id. at PageID 577–78.) Plaintiff also argues that its promotional YouTube video only showed an "almost complete" SNF in November 2021. (Id. at PageID 577 (citing ECF No. 46 ¶ 9).)[7] Additionally, Plaintiff points to Defendant's Payment of Linkous' claim for repairs related to the Flood. (ECF No. 47 at PageID 572.)[8]

Plaintiff argues that the meaning of the phrase "completion of construction" under Tennessee law requires 100% completion, which did not apply to the SNF at the time of the Flood. (See ECF No. 47-1 at PageID 591.) First, Plaintiff highlights the absence of a definition of the term "completion" in the Policy itself. (Id. at PageID 582.) Plaintiff's proposed interpretation under Tennessee law of "completion of construction" requires completion of all tasks required of

---

[7] The cited portion of the Joint Statement of Undisputed Facts states, "In November 2021 and prior to the water damage, Luke posted a marketing video of the interior and exterior of the SNF on YouTube." (ECF No. 46 ¶ 9.) Neither the video content nor title contain the phrase "almost complete." Cf. The Farms November 2021 Jordan River Update, https://www.youtube.com/watch?v=ETXradfUREo [https://perma.cc/P6FE-4LS4].

[8] There are no undisputed facts as to which term of the Policy governed Defendant's payment to Linkous' claim. (Cf. ECF No. 46.) At the Motion Hearing, Defendant reported that Linkous' claim was under the main form of the Policy as the named insured, and thus a different provision than the DIC Coverage Part for additional insured Plaintiff. Regardless, this is not material to the question of whether construction of the building or structure was complete at the time of the Flood.

the contractor and possession of the project by the owner. (See id. at PageID 585, 591.) Outstanding required tasks as of the Flood included the safety inspection of the nurse call system, which was delayed due to "Linkous' failure to provide approved plans and drawings" of the SNF, and the outstanding issuance of the certificate of occupancy. (Id. at PageID 583–84.)[9]

Plaintiff cites to various interpretations of completion in Tennessee caselaw under policies and statutes with different language than the Policy. (See id. at PageID 584–87 (citing City of S. Pittsburg v. Hailey, No. M2012–01185–COA–R3–CV, 2013 WL 3355658, at *4–5, *7 (Tenn. Ct. App. June 27, 2013) (interpreting key phrases "courses of construction" and "put to intended use"); Allen Elec. Co. v. Salmon, 1989 WL 89762, at *2, (Tenn. Ct. App. Aug. 8, 1989) (discussing "completion" under the Tennessee Mechanics and Materialmen's Lien Statute, T.C.A. § 66-11-143); Brookridge Apartments, Ltd. v. Universal Constructors, Inc., 844 S.W.2d 637, 640 (holding parties bound themselves by contract to the meaning of "substantial completion" of construction); Harrison v. Knafle, 161 S.W. 1003, 1005 (Tenn. 1913) ("complete" construction of a building for purposes of state lien statute)).)

At the Motion Hearing, Plaintiff conceded that the only outstanding task was the testing and inspection of the nurse call system. According to Plaintiff, only after the successful inspection would the construction of the SNF be completed. Plaintiff further emphasized that the nurse call system was hardwired into the building and not confirmed to be operational at the time of the Flood. Thus, Plaintiff argued, construction of the SNF "building or structure" was not "complete."

---

[9] Plaintiff also lists the "undisputed" tasks of the repair of some holes in the SNF's fire walls on November 22, 2021, and the outstanding installation of a pedicure chair. (Id. at PageID 584.) However, these facts are disputed. (See ECF No. 50-1 at PageID 706; cf. ECF No. 46.) Thus, the Court does not consider them.

        ii.      <u>Defendant's Arguments</u>

Defendant argues the Flood did not interrupt the "already completed construction, erection, or fabrication of the SNF 'building or structure.'" (ECF No. 48 at PageID 640.) Thus, as a matter of law, the Policy "does not provide coverage for Plaintiff's delay in completion claim." (Id. at PageID 639.) Defendant also contends Plaintiff fails to meet its burden of proving a covered loss occurred. (ECF No. 48-1 at PageID 654.)

Defendant points to two key representations under oath by Plaintiff on its January 2022 CONAPP. (See ECF No. 48-1 at PageID 655.) First, Plaintiff represented that construction of the SNF was "100% Complete" in November 2021. (Id.) Second, Plaintiff stated that, at the time of the Flood, the SNF was almost ready to open, pending one final inspection. (Id.) These two concessions, Defendant argues, show that construction was complete at the time of the Flood such that the Policy does not provide any coverage for Plaintiff's delay-in-completion claim. (See id.)

Additionally, Defendant argues the "building or structure" of the SNF was complete before the Flood under the plain language of the Policy. (See ECF No. 48-1 at PageID 656–57.) Defendant argues the Court's interpretation of the Policy must give meaning to the full phrase "completion of the construction, erection, or fabrication of the building or structure." (See id. at PageID 655–57.) In support, Defendant points to the definition of "building or structure" in the Policy, particularly the focus on permanence. (Id. at PageID 657 n.6 (citing ECF No. 46-2 at 20–21, 38).)

Defendant proposes the following interpretation of "construction, erection, or fabrication of a covered 'building or structure'": "the act or process of making, installing and/or assembling the materials that comprise the covered 'building or structure' (i.e., the SNF 'building or structure')." (ECF No. 50 at PageID 688.) Thus, Defendant contends, "completion" cannot

depend on "inspections, certificates of occupancy or health care facility licenses, which merely confirm, among other things, that the 'bricks and sticks' have been put together in substantial compliance with certain building, fire, and other codes." (See id.) Defendant also argues Plaintiff "misconstrues the holding" of each case Plaintiff alleges requires inspection and approval for "completion." (ECF No. 50 at PageID 690; see also ECF No. 50 at PageID 690–96 (analyzing City of S. Pittsburg, Brookridge, Allen Elec., and Harrison).)

At the Motion Hearing, Defendant emphasized the particular language in the DIC Coverage Part and insisted the Parties' chosen language must be given its intended meaning. Defendant also highlighted that personalty (which it argued included the nurse call system) was expressly excluded from coverage under the Policy because it is not a permanent part of the building or structure. (See also ECF No. 46-2 at PageID 383.) In closing, Defendant argued that adopting Plaintiff's interpretation of "delay" under the Policy would render everything past "completion" surplusage, which the Court should avoid at all costs when interpreting contracts.

   iii. <u>Analysis</u>

The Court must determine whether the Flood interrupted the completion of the SNF when all that remained before the final administrative approvals was the inspection of the already-installed nurse call system.

At the heart of this question are the Parties' dueling interpretations of "completion of the construction, erection, or fabrication of a covered 'building or structure.'" (See ECF No. 46-2 at PageID 416.) Plaintiff frames the definition of "completion" in terms of the building or structure being fully operational. (See ECF No. 47-1 at PageID 585, 591.) Defendant sticks closer to the terms of the Policy by framing "completion" in terms of the physical building or structure. (See ECF No. 48-1 at PageID 656–57 & 657 n.6.)

13

In its Response in Opposition, Plaintiff focuses on the factors of possession and operationality as determinative of the completion question. (See ECF No. 49 at PageID 669–71.) Plaintiff argues a building is not "complete" if the contractor had outstanding duties to perform. (Id. at PageID 670 (citing Cherokee Ins. Co. v. U.S. Fire Ins. Co., 559 S.W.2d 337, 339 (Tenn. Ct. App. 1977).) Plaintiff also argues a contractor bears the risk of loss before the owner takes possession of the premises, thus accepting the work as complete. (See id. at PageID 670–71 (citing Galyon v. Ketchen, 1 S.W. 58, 60–61 (Tenn. 1886).) Finally, Plaintiff cites the purported definition of "completion" under Tennessee's statute of repose, Tenn. Code. Ann. § 8-3-201(2): the "degree of completion of a project . . . upon attainment of which the owner can use the same for the purpose for which it was intended." (See id. at PageID 671.) But see Tenn. Code. Ann. § 8-3-201(2) (defining "substantial completion").

In its Reply, Defendant argues Plaintiff's focus on the factors of possession and operationality are irrelevant to the completion question under the Policy. (See ECF No. 51 at PageID 727–28.) Defendant describes Plaintiff's interpretation of Cherokee as inaccurate as well as irrelevant to the Court's interpretation of the Policy. (See id. at PageID 727–28.) Defendant points to the specific policy language at issue in Cherokee which terminated coverage when, among other inapplicable options, the property was either accepted by the owner or occupied. (Id. at PageID 727 (quoting 559 S.W.2d at 339).) Crucially, Defendant points to the Cherokee court's observation that the issue of completion was immaterial under the policy terms. (Id. at PageID 728 (quoting 559 S.W.2d at 339–40).) Defendant also argues the Galyon case only addressed the "risk of loss based upon acceptance of the work." (Id. (citing 1 S.W. at 509–11).) Finally, Defendant argues the "substantial completion" statutory definition cited by Plaintiff indicates that "the construction, erection, or fabrication of the SNF 'building or structure' would have been

14

completed long before November 29, 2021," per the Architect-issued certificate of substantial completion in August.  (Id. (comparing Tenn. Code. Ann. § 8-3-201(2) with the Joint Statement of Undisputed Facts, (ECF No. 46 ¶ 5), and the Certificate of Substantial Completion, (ECF No. 46-4)).)

The Court finds Defendant's arguments more persuasive under basic contract interpretation principles.  See Phillips, 474 S.W.3d at 664–65.  Focusing on the text of the Policy, as required by Tennessee law, see Howell, 842 F.2d at 822, the "building or structure" pertains to the permanent physical elements of the SNF, not its status as fully operational as a business.

Plaintiff's proposed interpretation of "completion of construction" is not supported by the cases it cites, which dealt with different language and/or contexts than the Policy.  See City of S. Pittsburg, 2013 WL 3355658, at *4–5, *7 (key policy phrases of "courses of construction" and "put to intended use"); Allen Elec., 1989 WL 89762, at *2 ("completion" under the Tennessee Mechanics and Materialmen's Lien Statute); Brookridge, 844 S.W.2d at 640 (the meaning of "substantial completion" of construction determined by parties' contract); Harrison, 161 S.W. at 1005 ("complete" construction of a building for purposes of state lien statute).  Some of the cases rely on specific contract language defining "completion" as completion of all tasks necessary for business operations.  See Harrison, 161 S.W. at 1004 (finding inspection approval determined construction completion based on parties' written contract); Brookridge, 844 S.W.2d at 640 (the meaning of "substantial completion" of construction determined by parties' contract).  No such definition exists in the Policy here.

The key language in the Policy is also more limited than the policy terms in the cases Plaintiff proposes as analogous.  The Policy focuses on the "completion of the construction, *erection, or fabrication of a covered 'building or structure.'*" (See ECF No. 46-2 at PageID 416

15

(emphasis added).) Plaintiff's proposed interpretation does not address the terms following "construction." (See ECF No. 47-1 at PageID 585, 591; id.) Adopting such interpretation would create the disfavored outcome of rendering "a portion of the [Policy] meaningless." See Feldman, supra, § 8:20; see also Simmons Little Bluestone Ltd. P'ship, 2024 WL 2237976, at *5.

Moreover, Plaintiff makes important concessions in the Joint Statement of Undisputed Facts which support finding the SNF's building or structure was complete before the Flood. Per Plaintiff's stipulations, its January 2022 CONAPP represented that "Construction [was] 100% Complete" in November 2021. (ECF No. 46 ¶ 7 (brackets in original).) Plaintiff also represented in its January 2022 CONAPP that there was only "one final inspection" required before the SNF could open. (See id. ¶ 10.) Moreover, Plaintiff does not dispute that no SNF items needed to be constructed, erected, fabricated, or installed on November 29, 2021. (Id. ¶ 14.)

The Court thus finds that the "construction, erection, or fabrication of the building or structure" of the SNF was complete per the terms of the Policy at the time of the Flood. Accordingly, per the terms of the Policy, the Flood did not delay the completion of the SNF and did not trigger coverage under the Policy. Thus, Defendant is entitled to judgment as a matter of law. Defendant's Motion for Summary Judgment is **GRANTED**.

IV.   **CONCLUSION**

For the reasons set forth above, Plaintiff's Motion for Partial Summary Judgment is **DENIED** and Defendant's Motion for Summary Judgment is **GRANTED**. A Judgment will be entered dismissing the case with prejudice.

**SO ORDERED**, this 4th day of August, 2025.

                                            */s/ Jon P. McCalla*
                                            JON P. McCALLA
                                            UNITED STATES DISTRICT JUDGE